United States Courts
Southern District of Texas
FILED

SEP 27 2002

Michael N. Milby, Clerk

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.           ✦ Civil Case
    Plaintiff                                       ✦
                                            ✦ H-02-0843
Versus

Nick Maris & P.M.E. Corporation, both individually doing business    B-03-021
as Sportsmen's Cafe

    Defendants

### Plaintiff's Motion for Default Judgment

Plaintiff moves for entry of a default judgment, pursuant to Fed.R.Civ.P. 55:

    1.    This is an action for violation of 47 U.S.C. 605 and 553, arising out of the Defendants' willful and illegal interception and misappropriation of a closed circuit exhibition of the boxing match between Evander Holyfield vs. Lennox Lewis, from Madison Square Garden, in New York City, New York, on March 13, 1999 including undercard or preliminary bouts (the fight will be referred to as the "Event"), at closed-circuit locations, like theaters, arenas, bars, clubs, lounges, restaurants and similar business establishments throughout Texas and other geographical locales.

    2.    All Defendants were served with the Complaint and failed to answer or respond as required by law. Nick Maris, Defendant, did appear before the Court during the Scheduling Conference of the Case. However, Nick Maris still has not answered the Complaint. Mitsy Michelle Maris, the Registered Agent for P.M.E. Corporation, Defendant, filed an answer for the behalf of the Defendant Corporation. However, since Mitsy Michelle Maris is not an officer of the Defendant Corporation, her answer does not constitute a legal answer that prevent the entry of default judgment. Accordingly, the Clerk of this Court entered default. As a result of the entry of this default, all allegations contained in the Complaint are deemed admitted. Nishimatsu Construction Co., v. Houston National Bank, 515 F.2d 1200 (5th Cir. 1975).

    3.    Pursuant to 47 U.S.C. 605 and 553, Plaintiff is entitled to statutory damages, as follows:

    a. For each violation of the statute, damages in the amount of between One Thousand Dollars ($1,000.00) and Ten Thousand Dollars ($10,000.00), pursuant to 605(e)(3)(C)(i)(II);

    b. For willful violation of the statute, damages in the amount of between Ten Thousand Dollars ($10,000.00) and One Hundred Thousand Dollars ($100,000.00), pursuant to 605(e)(3)(c)(ii);

    c. For each violation of the statute, damages in the amount of between Two Hundred Fifty Dollars ($250.00) and Ten Thousand Dollars ($10,000.00), pursuant to 553(3)(A)(ii); and d. For willful violation of the statute, damages up to Fifty Thousand

#17

Dollars ($50,000.00), pursuant to 553(3)(B); e Full costs, including reasonable attorneys' fees, pursuant to 605(e)(3)(B)(iii).

4. Plaintiff's Declaration proves the facts contained in the Complaint and the Memorandum of Law in Support of Plaintiff's Motion for Default Judgment. The investigator's affidavit proves that the Event was exhibited by the Defendants, and describing the number of patrons viewing the Event. Requests for admissions were served with the complaint. They have not been answered and are deemed admitted. Plaintiff asks the Court to take judicial notice of the deemed admissions and the fact that they prove Plaintiff's case. The Affidavit of Riecke Baumann, attorney for the Plaintiff, proves the attorneys' fees and costs incurred by Plaintiff.

5. Because the amount of damages in this case is discretionary, the Plaintiff has filed an accompanying Memorandum of Law describing the method for calculating the damages in this case.

Plaintiff requests that the Court to:

    a. enter a judgment by default against all Defendants;

    b. award $10,000.00 in statutory damages against each Defendant and additional damages in the amount of $50,000.00 for each violation based on the Defendant's conduct;

    c. award $3,000 in attorneys' fees to Riecke Baumann; and

    d. costs against each Defendant; and grant Plaintiff such other relief as the Court deems just and proper.

Respectfully submitted,

Riecke Baumann
Attorney at Law
SBOT # 01931700
1601 Westheimer Road
Houston, Texas 77006
T/P    (713) 529-1600
Fax   (713) 520-6417
Riecke@TexasCollect.com

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.  ✢ Civil Case
   Plaintiff  ✢
  ✢ H-02-0843
Versus
  ✢
Nick Maris & P.M.E. Corporation, both individually doing business
as Sportsmen's Cafe

   Defendants

## Certificate of Service
## On Default Judgment

To Nick Maris & P.M.E. Corporation, both individually doing business as Sportsmen's Cafe, at 634 13th Street, Harlingen, Texas 78598 by certified mail.

Copies of the Plaintiff's motion for default judgment and judgment were served on Sep 25 2002, to the persons and the addresses shown.

By: _____

Riecke Baumann
Attorney for KingVision Pay-Per-View Ltd.
SBOT # 01931700
1601 Westheimer Road
Houston, Texas 77006
T/P   (713) 529-1600
Fax   (713) 520-6417
Riecke@TexasCollect.com

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.  ✦ Civil Case
    Plaintiff  ✦
        ✦ H-02-0843

Versus  ✦

Nick Maris & P.M.E. Corporation, both individually doing business
as Sportsmen's Cafe

    Defendants

### Affidavit for Skip Klauber
### to Prove Plaintiff's Damages

Skip Klauber, known to me to be the same, being duly sworn, swears that:

1.    I am the Attorney of KingVision Pay-Per-View Ltd., ("Plaintiff"), and authorized to give this testimony.

2.    Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events.

3.    Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the closed-circuit telecast of the March 13, 1999 boxing match between Evander Holyfield vs. Lennox Lewis, as well as being licensed to exhibit the match, including undercard or preliminary bouts (collectively the "event") at closed circuit locations, such as theaters, arenas, clubs, lounges, restaurants and other commercial establishments throughout the State of Texas.

4.    In Texas, the event was legally available to commercial establishments only through an agreement with Plaintiff.

5.    In order to safeguard against the unauthorized interception or receipt of the event, the interstate satellite transmission of the event was electronically coded or scrambled and was not available to or intended for the use of the general public. If a commercial establishment was authorized by Plaintiff to receive the event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal.

6.    Authorized commercial establishments which contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Event. This sublicense fee was based on the capacity of the establishment. The fee was based on $\underline{\$~20}$ times the maximum fire code occupancy of the commercial establishment purchasing the event. For example, if an establishment had a maximum fire code occupancy of 150 persons, the fee would have been $\underline{\$~3000}$.



7. On March 13, 1999, without authorization, the Defendant, Nick Maris & P.M.E. Corporation, a Texas corporation d/b/a Sportsmen's Cafe, and Mitsy Michelle Maris, individually, ("Defendants") intercepted and received or assisted in the interception and receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of the Defendants' Establishment. On the night of the Event, ~~investigators/employed by plaintiff~~ an auditor observed the Event being telecast to the patrons of the Defendant's Establishments. A copy of the Investigator's affidavit for this establishment is attached hereto to Plaintiff's Memorandum of Law in Support of Prove-Up on Damages by Default as Exhibit B.

8. Defendants could not have obtained the transmission of the Event had they not undertaken specific wrongful actions to intercept, receive and/or exhibit the Telecast.

9. In addition to lost licensing fees, Defendant's patrons purchased food and/or drinks while viewing the Event. But for Defendants' pirating, its patrons would have had to view the Event at a commercial establishment authorized by Plaintiff to receive and exhibit the transmission.

10. As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose as customers, legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as the Defendant, which steal sports and other closed-circuit programming. Because these unauthorized commercial establishments offer the stolen programming to its patrons for no fee or for a fee which is less than the authorized establishments may have charged, the legitimate commercial establishments with the right to broadcast closed-circuit programming cannot attract paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees that they paid, lose patrons and incur financial loss. When an unauthorized commercial establishment advertises the availability of the pirated programming, the number of patrons at the unauthorized commercial establishment increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional loss.

11. A major source of Plaintiff's revenue is the sublicense fees which it charges to authorized commercial establishments of the right to broadcast closed-circuit sports and entertainment programming, such as the Event. Clearly, therefore, the Defendant' actions have eroded the base of Plaintiff's customers. Each patron of the Defendant is lost as a future patron of authorized broadcasts. But for the Defendant' unauthorized broadcast of the Event, all or some of the patrons of the Defendant would have become paying patrons and directly increased the fees paid to Plaintiff by its authorized commercial establishments.

12. Further, Plaintiff has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the location of other authorized commercial establishments licensed to receive the programming. Therefore, when an unauthorized commercial establishment intercepts, receives and exhibits closed-circuit programming, like the Event, Plaintiff's reputation and goodwill suffer from what appears like a misrepresentation. Furthermore, an incalculable damage is the ill-will and possible loss of future business from legitimate commercial establishments which refuse to pay sublicense fees because they cannot compete with unauthorized commercial establishments which pirate closed-circuit programming, such as the Event.

13.  The continued viability of Plaintiff as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event. If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming.

14.  Because the Event was broadcast to the Defendants' patrons, the Defendants only purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial purposes by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff.

15.  As a willful violator of this Act, the Defendant must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments would be encouraged to violate the law knowing the full extent of its liability would not exceed what they would have to pay for a license on the open market. The award of damages must be sufficiently significant to deter the Defendant and other unauthorized commercial establishments from pirating protected communications.

I swear, under the penalties of perjury and upon personal knowledge that these facts are true.

_____
Skip Klauber

Subscribed and sworn to before me this ___ day of _____, 2002.
Notary Public

_Candace L. Blank_

Candace Lorrin Blank
Commission # CC 876835
Expires Oct. 5, 2003
Bonded Thru
Atlantic Bonding Co., Inc.

\\Server1\D\DATA\Hearing cases\King Vision\Spearmen's Cafe 3-02\KB's default judgment.doc

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.  ✦ Civil Case
   Plaintiff  ✦
                                                                                 ✦ H-02-0843

Versus

                                                                                                      ✦

Nick Maris & P.M.E. Corporation, both individually doing business
as Sportsmen's Cafe

   Defendants

### Affidavit in Support of
### Request for Attorney's Fees

State of Texas

County of Harris

    1.    I, Riecke Baumann, am Plaintiff's counsel. I am over eighteen years old, have personal knowledge of the facts listed, and am competent to testify as a witness in these proceedings.

    2.    The attached time sheets reflect the time spent in this case by the Plaintiff's counsel.

    3.    Exhibit 2 shows that the total legal fees due are $3,00.00, which I request.

I swear, upon personal knowledge that the facts are true.

                                                                                                                          _/s/ Riecke Baumann_

Dated: _Sep 23, 02_

The foregoing instrument was acknowledged before me this _23_ day of _Sep_, by _Riecke Baumann_. He is personally known to me and did take an oath.

                                                _Linda Sharpe_               Notary Public

My Commission Expires:

                                                LINDA SHARPE
                                          NOTARY PUBLIC, STATE OF TEXAS
                                                MY COMMISSION EXPIRES
                                                          DEC. 6, 2005

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.
    Plaintiff

Versus

Nick Maris & P.M.E. Corporation, both individually doing business as Sportsmen's Cafe

    Defendants

✦ Civil Case
✦
✦ H-02-0843
✦

## Rule 55 Default Judgment

Plaintiff's having requested and obtained the entry of a default, jointly and severally, against Nick Maris & P.M.E. Corporation, both individually doing business as Sportsmen's Cafe, pursuant to Rule 55(a), Fed R. Civ. P., and Plaintiff's having moved for the entry of judgment by default; and this matter having come on before the Court for a non-jury trial on the issue of damages pursuant to Rule 55(b)(2), Fed R. Civ. P.; and the issues having been duly tried; and the Court's having this date rendered an oral opinion; by the United States District Court for the Southern District of Texas, Houston Division,

It is ORDERED that Plaintiff, KingVision Pay-Per-View Ltd., have judgment against Nick Maris & P.M.E. Corporation, both individually doing business as Sportsmen's Cafe, for $_____, plus statutory damages of $_____ together with costs in this behalf expended, all to bear interest at the rate of _____ per cent per annum from the date of judgment, plus attorney's fees of $3,000 to Riecke Baumann at _____ per cent per year from date of judgment, for all of which let execution and abstracts immediately issue.

All damages are joint and severable.

All other relief not granted, including counterclaims, is denied.

SIGNED on the _____ day of _____, 2002.

_____
Judge David Hittner