38

**The Baumann Law Firm**
ATTORNEYS AT LAW
1601 Westheimer
Houston, Texas 77006-3795
Telecopier: (713) 520-6417
(713) 529-1600
Riecke@Texascollect.com

United States District **Court**
Southern District of Texas
FILED

JUL 0 3 2003

Michael N. **Milby**
Clerk of **Court**

**MAIL**
**United** States District Court
**Southern** District of Texas
RECEIVED

JUL 0 3 2003

**Michael** N. Milby
Clerk of Court

Riecke Baumann
Board Certified Consumer Bankruptcy
Texas Board of Legal Specialization

Texas Bar Association
# 01931700
Louisiana Bar Association
# 02859

June 30, 2003

To:  United States District Clerk
     600 E. Harrison Street
     Brownsville, Texas, 78520-2510

Re: Nick Maris & P.M.E. Corporation Doing Business As Sportsmen's Cafe
    B-03-021
    Client: KingVision Pay-Per-View Ltd.

Dear Clerk:

Enclosed please find the original (in the green notebook) and two copies of the pretrial order, proposed finding of facts and conclusions of law, witness list, exhibits, and exhibit list.

The copies are merely stapled.

Also enclosed are an original and two copies of the proposed motion in limine, with order.

Please file all of them, then send us one set, for our files.

A complete set is being sent to Mr. Belk, opposing counsel.

Please call us, asap, if there be a problem.

Thanks.

Yours very truly,

Riecke Baumann



In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.                    ✦                    Civil Case
                                                ✦
                                                ✦                    B-03-021
          versus                                ✦

Nick Maris & P.M.E. Corporation, both                                Judge
individually and doing business as                                   John William Black
Sportsmen's Cafe

Plaintiff's Motion in Limine

KingVision Pay-Per-View Ltd. moves the Court to exclude the following testimony:

1. any evidence or testimony offered by defendants regarding what Nick Maris was told by DirectTV or any other "cable tv" type provider, as it is hearsay;

2. any evidence or testimony offered by defendants that contradicts the deemed admissions;

3. any evidence or testimony offered by defendants regarding the areas of inquiry set out in plaintiff's requests for production or interrogatories.

4. any evidence or testimony offered by defendants, since they failed to assist in the preparation of the pre-trial order.

Certificate of Conference.  Plaintiff's counsel discussed the pre-trial order with opposing counsel, on Monday, June 23, 2003, and was advised that defense counsel would "get back" to him, to discuss the pre-trial matters, but has not done so.  Since he has not done so, this motion was not discussed.

                                   Respectfully submitted,

Riecke Baumann
Attorney at Law
1601 Westheimer Road
Houston, Texas  77002
T/p  713  529-1600
Fax  713  520-6417
SBOT  01931700
Riecke@TexasCollect.com

Certificate of Service

Copies of the motion in limine and order were served with the pre-trial order,
On June 30, 2003.

_____ Riecke Baumann

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.                    ✦                    Civil Case
                                                ✦
                                                ✦                    B-03-021
        versus
                                                ✦
Nick Maris & P.M.E. Corporation, both                               Judge
individually and doing business as                                  John William Black
Sportsmen's Cafe

### Order Limiting Testimony

The following evidence is excluded from introduction:

1.  any evidence or testimony offered by defendants regarding what Nick Maris was told by DirectTV or any other "cable tv" type provider;

2.  any evidence or testimony offered by defendants that contradicts the deemed admissions;

3.  any evidence or testimony offered by defendants regarding the areas of inquiry set out in plaintiff's requests for production or interrogatories.

4.  any evidence or testimony offered by defendants.

Date: _____                    _____
                                         John William Black
                                         Judge Presiding

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.             ✦                    Civil Case
                                         ✦
                                         ✦                    B-03-021
        versus                           
                                         ✦
Nick Maris & P.M.E. Corporation, both                         Judge
individually and doing business as                            John William Black
Sportsmen's Cafe


Plaintiff's Proposed Pre-Trial Order

(Defendants have not responded.)

**Declaration, regarding notice.**    Plaintiff's counsel e-mailed a copy of the scheduling order to defendants' attorney, two weeks ago, and telephoned defense counsel, John Belk, on June 23, 2003, to discuss the case and the pre-trial order.  I have received no response, as of Monday, June 30, 2003, at 3:00 p.m.  Copies of the requests for admissions, requests for production and interrogatories, hand delivered to Mr. Maris, at the August 2002, scheduling conference were also provided to counsel, as well as a reminder that they have not been answered.


1.    **Appearance of Counsel**.    Plaintiff's counsel is Riecke Baumann, 1601 Westheimer Road, Houston, Texas   77006, Riecke@TexasCollect.com, 713 529-1600, fax 713 520-6417.

Defendants are represented by John Belk, 1001 McKinney #1400, Houston, Texas 77002, however John T Blaylock, 2255 Barnard # C, Brownsville, Texas 78520, 956  554-3733, fax 956 544-7766, made a telephone appearance, but has served nothing on plaintiff.

2.    **Statement of the Case.**
KingVision Pay-Per-View Ltd. sues Nick Maris (also known as James Paul Maris) & P.M.E. Corporation, both individually doing business as Sportsmen's Café, for actual and special damages for the pirating of a pay-for-view boxing match

("event") between Evander Holyfield vs. Lennox Lewis, held at Madison Square Garden, in New York City, New York (venue), on March 13, 1999 "event date." The piracy occurred at "Sportsmen's Cafe" ("establishment"), at 634 N. 13th St., Port Mansfield, Texas 78598 ("premises"). The Texas Alcoholic Beverage Commission's records show that the liquor license for the location of the bar is in the name of P.M.E. Corporation. P.M.E. Corporation is an alter ego of Nick Maris, since his daughter, who has lived in Colorado for many years, owns the stocks but Mr. Maris has a universal power of attorney over the corporation. Mr. Maris is in total control of the bar and the corporation.

3.   **Jurisdiction.**

   I.   This action arises under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. 553 and 605.

   II.  Jurisdiction in this Court is proper under 28 U.S.C 1331.

   III. Venue in this Court is proper under 28 U.S.C. 1391(b) as these claims arose in this district.

4.   **Motions.**

No motion is pending, but Plaintiff will move for judgment, at the pre-trial, based on the admissions, and move to exclude any evidence requested in the request for production and interrogatories (since they have not been answered), if the Court will allow the motions.

5.   **Contentions of the Parties.**

Plaintiff believes that the defendants "pirated" the fight and broadcast the event to the bar's customers, without authority, damaging plaintiff and violating Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. 553 and 605.

6. **Admissions of Fact.**

The attached admissions have been deemed, by operation of law.

Plaintiff believes that by not engaging in the preparation of this pre-trial order, defendants have waived the right to deny any fact alleged by plaintiff, and the proposed findings of facts attached to this proposed order are admitted, as are the facts included in the affidavits of the auditor and plaintiff's representatives.

7. **Contested Matters of Fact.**

Since the admissions have been deemed, by operation of law, Plaintiff believes

that the only issue is the amount of attorneys' fees to be awarded to Plaintiff.

8. **Agreed Propositions of Law.**

Plaintiff believes that by not engaging in the preparation of this pre-trial order,

defendants have waived the right to dispute any proposition of law alleged by

plaintiff, and the proposed propositions of law attached to this proposed order are

agreed. Please see attached conclusions of law.

9. **Contested Proposition of Law.**

Plaintiff is not aware of any disputed issue of law.

10. **Exhibits – See attached.**

The exhibits will be:

    I. The licensing agreement;

    II. The auditor's report;

    III. A copy of the public information downloaded from the Texas Alcoholic

        Beverage Commission's web-site;

    IV. A copy of the public information downloaded from the Texas Secretary of

        State's web-site;

    V. The client's representative's affidavit (The original is already on file,

        attached to the motion for default judgment);

    VI. Pre-suit demand letters, and returned mail;

    VII.  Transcript of default judgment hearing.

   VIII.  Plaintiff's requests for admissions, for production, and interrogatories.

    IX.  Power of attorney.

11.  **Witnesses.**

    I.  Riecke Baumann, as to attorneys' fees, and service of discovery.  He is an attorney, licensed for 28 years.

    II.  Plaintiff's representative, probably by affidavit, as to damages (Kelly Ann Filerino or Marcus Corwin).

   III.  Auditor, Miguel Gomez Jr., probably by the affidavit attached to the exhibit list.

   IV.  Defendant.

    V.  Any witness called by Defendant.

12.  **Settlement.**

Chances are slim.

13.  **Probable length of trial.**

Three hours, maybe four.

14.  **Attachments, for non-jury trial.**

Witness list.

Exhibits list.

**Proposed findings of fact.**

## I. General Facts

    i.  Defendants broadcast the boxing match, without authority.

    ii.  The boxers were Evander Holyfield vs. Lennox Lewis, the "event date" was March 13, 1999, at Madison Madison Square Garden, in New York City, New York.

    iii.  The piracy occurred at "Sportsmen's Cafe" ("establishment"), at 634 N. 13th St., Port Mansfield, Texas 78598 ("premises").

    iv.  The Texas Alcoholic Beverage Commission's records show that the liquor license for the location of the bar is in the name of P.M.E. Corporation.

    v.  The TABC's records are correct.

    vi.  The rate, per head, for broadcasting the fight was $20, with a minimum of $1,000.

    vii.  The occupancy was 150, and 35 patrons were present.

    viii.  Nick Maris actually owns the corporation.

    ix.  The corporation is his alter ego.

    x.  He runs the bar and the corporation, as he wishes.

    xi.  Nick Maris' daughter owns the shares in the corporation, but Nick Maris has her power of attorney to solely operate the corporation.

## II. VIOLATION OF 47 U.S.C. 553

    i.  The defendants broadcast the event, with knowledge that they were unauthorized.

    ii.  Plaintiff was damaged, at least $10,000.

    iii.  The facts justify $50,000 in punitive damages.

iv. Plaintiff entered into a closed-circuit television license agreement to exhibit the closed-circuit telecast of the event date, including undercard or preliminary bouts (the boxing match and all related bouts are collectively referred to as the "Event"), at closed-circuit locations like theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Texas (the "License Agreement"). Plaintiff paid substantial fees for its license.

v. Plaintiff entered into the License Agreement for the purpose of distributing for a commercial gain the closed-circuit broadcast of the Event to various business establishments throughout Texas.

vi. The closed-circuit broadcast of the Event was not intended for the use of the general public. In Texas, the closed-circuit broadcast of the Event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by Plaintiff.

vii. Pursuant to the License Agreement, Plaintiff marketed and distributed the closed-circuit rights granted to it. Plaintiff, through its agents, contracted with various establishments throughout Texas and granted to such establishments the right to broadcast the Event in exchange for a fee.

viii. Defendants did not contract for the rights to broadcast the event.

ix. The transmission of the Event was electronically coded or "scrambled". In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment.

x. Transmission of the Event was available to the Defendants to purchase for broadcast in establishment, at the premises. Had they done so, they would have been authorized to receive, transmit and publish the Event in that location. Defendants did not, however, contract with Plaintiff or any of its agents, to obtain the rights to broadcast the Event.

xi. The establishments which contracted with Plaintiff to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event.

xii. On the event date, in violation of Plaintiff's rights and federal and state law, the Defendants willfully intercepted and/or received the interstate communication of the Event. In the alternative, the Defendants assisted in the receipt of the interstate communication of the Event. The Defendants then transmitted, divulged and published said communication, or assisted in transmitting, divulging and publishing said communication, to their patrons within the premises.

xiii. The Defendants misappropriated the licensed exhibition of Plaintiff of the Event and infringed upon the exclusive rights of Plaintiff while avoiding proper payment to Plaintiff. Defendants' actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain.

xiv. The Defendants enabled the patrons within the premises to view the Event, which neither the Defendants nor the patrons were entitled to do.

xv. The persons whom Defendants permitted to view the Event would otherwise have been able to view it at a commercial establishment only if said commercial establishment was properly licensed and authorized by Plaintiff.

xvi. The Defendants were not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time.

### III. **VIOLATION OF 47 U.S.C. 605**

i. The same facts apply to §605 as to §553. The Defendants' wrongful actions in connection with the Event were in violation of §605.

ii. By virtue of the License Agreement, Plaintiff maintained proprietary rights in the intercepted communication of the Event. Therefore, Plaintiff is an aggrieved person and is entitled to recover damages from the Defendants for their violations of Section 605 and their interference with the proprietary rights of Plaintiff.

iii. As a result of the Defendants' wrongful acts, Plaintiff is entitled to the statutory damages provided for in Section 605.

### IV. **Damages.** Because of Defendants' wrongful actions, Plaintiff is entitled to judgment against both Defendants for

(a)    statutory damages in the amount of Ten Thousand Dollars ($10,000.00), pursuant to 605(e)(3)(C)(i)(II);

(b)    statutory damages of $50,000, pursuant to 605(e)(3)(C)(ii); and

(c)    full costs, including $2500 in attorney's fees, pursuant to 605(e)(3)(B)(iii).

**15.    Proposed Findings of Law.**

I.    This action arises under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. 553 and 605.

II.    The Court has jurisdiction and venue over this case;

III.    P.M.E. Corporation is Nick Maris' alter ego.

IV.    Because of Defendant's 'wrongful actions, Plaintiff is entitled to judgment against each Defendant, separately, for

(a) statutory damages in the amount of Ten Thousand Dollars ($10,000.00), pursuant to 605(e)(3)(C)(i)(II);

(b) statutory damages of $50,000, pursuant to 605(e)(3)(C)(ii); and

(c) full costs, including attorney's fees, pursuant to 605(e)(3)(B)(iii).

Date: _____

_____
John William Black
United States District Judge

Approved:

Date: _____

_____
Riecke Baumann, Attorney for Plaintiff

Date: _____                    _____,
                                                   John Belk Attorney for Defendant

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.

Versus

Nick Maris & P.M.E. Corporation,
both individually doing business as Sportsmen's Cafe

+    Civil Case
+
+    B-03-021
+
+    Judge
     John William Black

### Certificate of Service

Copies of the pretrial order, with exhibits list, were mailed, as set out below, on June 30, 2003.

Defendants are represented by John W. Belk, 1001 McKinney #1400, Houston, Texas, 77002, who was served by certified mail.

_____ Riecke Baumann

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.      ✦        Civil Case
                      ✦
                      ✦        B-03-021

   versus

                      ✦

Nick Maris & P.M.E. Corporation, both       Judge
individually and doing business as           John William Black
Sportsmen's Cafe

### Findings of fact.

**I.  General Facts**

    i.   Defendants broadcast the boxing match, without authority.

    ii.  The boxers were Evander Holyfield vs. Lennox Lewis, the "event date" was March 13, 1999, at Madison Madison Square Garden, in New York City, New York.

    iii. The piracy occurred at "Sportsmen's Cafe" ("establishment"), at 634 N. 13th St., Port Mansfield, Texas 78598 ("premises").

    iv.  The Texas Alcoholic Beverage Commission's records show that the liquor icense for the location of the bar is in the name of P.M.E. Corporation.

    v.   The TABC's records are correct.

    vi.  The rate, per head, for broadcasting the fight was $20, with a minimum of $1,000.

    vii. The occupancy was 150, and 35 patrons were present.

    viii. Nick Maris actually owns the corporation.

    ix.  The corporation is his alter ego.

    x. He runs the bar and the corporation, as he wishes.

    xi. Nick Maris' daughter owns the shares in the corporation, but Nick Maris has her power of attorney to solely operate the corporation.

## II. <u>VIOLATION OF 47 U.S.C. 553</u>

    i. The defendants broadcast the event, with knowledge that they were unauthorized.

    ii. Plaintiff was damaged, at least $10,000.

    iii. The facts justify $50,000 in punitive damages.

    iv. Plaintiff entered into a closed-circuit television license agreement to exhibit the closed-circuit telecast of the event date, including undercard or preliminary bouts (the boxing match and all related bouts are collectively referred to as the "Event"), at closed-circuit locations like theaters, arenas, bars, clubs, lounges, restaurants and the like throughout Texas (the "License Agreement"). Plaintiff paid substantial fees for its license.

    v. Plaintiff entered into the License Agreement for the purpose of distributing for a commercial gain the closed-circuit broadcast of the Event to various business establishments throughout Texas.

    vi. The closed-circuit broadcast of the Event was not intended for the use of the general public. In Texas, the closed-circuit broadcast of the Event could only be exhibited in a commercial establishment if said establishment was contractually authorized to do so by Plaintiff.

    vii. Pursuant to the License Agreement, Plaintiff marketed and distributed the closed-circuit rights granted to it. Plaintiff, through

its agents, contracted with various establishments throughout Texas and granted to such establishments the right to broadcast the Event in exchange for a fee.

viii. Defendants did not contract for the rights to broadcast the event.

ix. The transmission of the Event was electronically coded or "scrambled". In order for the signal to be received and telecast clearly, it had to be decoded with electronic decoding equipment.

x. Transmission of the Event was available to the Defendants to purchase for broadcast in establishment, at the premises. Had they done so, they would have been authorized to receive, transmit and publish the Event in that location. Defendants did not, however, contract with Plaintiff or any of its agents, to obtain the rights to broadcast the Event.

xi. The establishments which contracted with Plaintiff to broadcast the Event were provided with the electronic decoding capability and/or satellite coordinates necessary to receive the signal of the Event.

xii. On the event date, in violation of Plaintiff's rights and federal and state law, the Defendants willfully intercepted and/or received the interstate communication of the Event. In the alternative, the Defendants assisted in the receipt of the interstate communication of the Event. The Defendants then transmitted, divulged and published said communication, or assisted in transmitting, divulging and publishing said communication, to their patrons within the premises.

xiii. The Defendants misappropriated the licensed exhibition of Plaintiff of the Event and infringed upon the exclusive rights of Plaintiff while avoiding proper payment to Plaintiff. Defendants' actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain.

xiv. The Defendants enabled the patrons within the premises to view the Event, which neither the Defendants nor the patrons were entitled to do.

xv. The persons whom Defendants permitted to view the Event would otherwise have been able to view it at a commercial establishment only if said commercial establishment was properly licensed and authorized by Plaintiff.

xvi. The Defendants were not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time.

## III. VIOLATION OF 47 U.S.C. 605

i. The same facts apply to §605 as to §553. The Defendants' wrongful actions in connection with the Event were in violation of §605.

ii. By virtue of the License Agreement, Plaintiff maintained proprietary rights in the intercepted communication of the Event. Therefore, Plaintiff is an aggrieved person and is entitled to recover damages from the Defendants for their violations of Section 605 and their interference with the proprietary rights of Plaintiff.

iii.  As a result of the Defendants' wrongful acts, Plaintiff is entitled to the statutory damages provided for in Section 605.

IV.  **Damages.**  Because of Defendants' wrongful actions, Plaintiff is entitled to judgment against both Defendants for

(a)  statutory damages in the amount of Ten Thousand Dollars ($10,000.00), pursuant to 605(e)(3)(C)(i)(II);

(b)  statutory damages of $50,000, pursuant to 605(e)(3)(C)(ii); and

(c)  full costs, including $2500 in attorney's fees, pursuant to 605(e)(3)(B)(iii).

Date: _____                    _____

                                         John William Black
                                         Judge Presiding

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.                    +                    Civil Case
                                                                 +
                                                                 +                    B-03-021
           versus                                        +

Nick Maris & P.M.E. Corporation, both                    Judge
individually and doing business as                       John William Black
Sportsmen's Cafe

### Findings of Law.

V.   This action arises under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. 553 and 605.

VI.  The Court has jurisdiction and venue over this case;

VII. P.M.E. Corporation is Nick Maris' alter ego.

VIII. Because of Defendant's 'wrongful actions, Plaintiff is entitled to judgment against each Defendant, separately, for

      (a) statutory damages in the amount of Ten Thousand Dollars ($10,000.00), pursuant to 605(e)(3)(C)(i)(II);

      (b) statutory damages of $50,000, pursuant to 605(e)(3)(C)(ii); and

      (c) full costs, including attorney's fees, pursuant to 605(e)(3)(B)(iii).


Date: _____                    _____
                                          John William Black
                                          Judge Presiding

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.          *          Civil Case
      Plaintiff          *
                      *          B-03-021
                      *
Versus          *
                      *
Nick Maris &P.M.E. Corp. both individually  *
and d/b/a/ Sportsmen's Café          *          Judge
      Defendant          *          John William Black

Plaintiff's Exhibit List

| NO. | DESCRIPTION | OFFR | OBJ | DATE |  |
|-----|-------------|------|-----|------|--|
|     |             |      |     | ADMIT | N/ADMIT |
| 1.  | Licensing Agreement |  |  |  |  |
| 2.  | Auditor's Report |  |  |  |  |
| 3.  | A copy of the public information downloaded from the Texas Alcoholic Beverage Commission's web-site |  |  |  |  |
| 4.  | A copy of the public information downloaded from the Texas Secretary of State's web-site |  |  |  |  |
| 5.  | Plaintiff's Affidavit |  |  |  |  |
| 6.  | Pre-Suit Demand Letters |  |  |  |  |
| 7.  | Transcript of default judgment proceeding |  |  |  |  |
| 8.  | Plaintiff's requests for admissions, for production, and interrogatories |  |  |  |  |

06/10/03  TUE 11:55 FAX 5614825414                 SECURE SIGNAL, INC.



# DON KING PRODUCTIONS, INC.

February 12, 1999

KingVision Pay-Per-View, Ltd., Corp.
501 Fairway Drive
Deerfield Beach, FL 33441

RE:     Evander Holyfield v. Lennox Lewis
        World Heavyweight Championship
        March 13, 1999
        Closed Circuit Television Rights

Gentlemen:

Don King Productions, Inc. (King) in association with Panix of the U.S., Inc., Main Events, and Madison Square Garden are the promoters of the Evander Holyfield v. Lennox Lewis World Heavyweight Championship, including the preliminary undercard bouts, scheduled for Saturday, March 13, 1999 at the Madison Square Garden, New York, New York (the "Event").

This letter shall confirm that King has authorized, exclusively, KingVision Pay-Per-View, Ltd., Corp., a Delaware corporation, to license, or license others to exhibit the live telecast of the Event and accompanying undercard matches, simultaneously with the Event, at the closed circuit television exhibition outlets and other commercial establishments (such as theaters, arenas, race tracks, bars, clubs, lounges, restaurants and like) within the Continental United States. You are accordingly authorized to commence licensing and marketing of the Event.

Sincerely,

Donna K. Westrich
Vice President
Pay-Per-View Operations

501 Fairway Drive, Deerfield Beach, FL 33441
Telephone: (954) 418-5800 ■ Telefax: (954) 418-0166

2

AFFIDAVIT OF: __MIGUEL GOMEZ JR__ (name of auditor)   **TX 33**

COUNTY OF: __WILLACY__   STATE OF: __TEXAS__

BEFORE ME, the undersigned authority, on this day personally appeared __MIGUEL GOMEZ JR__ _____ (name of auditor), and after being first duly sworn according to law, deposes and states as follows:

1. My name is __MIGUEL GOMEZ JR__ (name of auditor). I am over the age of eighteen (18) years, of sound mind, competent to testify as to the matters contained herein, personally acquainted with the facts stated herein, and state that they are true and correct.

2. I am currently employed by:
   __BULLETPROOF__

3. At approximately __8:10pm__ m. on __saturday__, March __13th__, 1999, I entered:

   (name of establishment) __SPORTSMEN CAFE__

   __HWY 186 AND SOUTH SHORE DRIVE__   __PORT MANSFIELD TX,__
   (street number and address)          (city, state, zip code) __78598__

At that time, I observed that __SPORTSMEN CAFE__ (name of establishment) was displaying the Evander Holyfield vs. Lennox Lewis boxing match and/or its undercard preliminary bouts. I took a head count at this time and counted approximately __35__ (number of) persons inside the establishment. I also noticed there were __3__ (number of) televisions and/or monitors for viewing by patrons inside this establishment.

4. The television monitor(s) displayed the following (the identity of any boxing activity witnesses, specifically, if applicable, names of fighters, color of boxing trunks, round number, time remaining in round, and logos as they appear on the microphones, ring mat, ring posts or television screens):
__RUIZ HAD ON BLACK TRUNKS AND CAWLY HAD WHITE TRUNKS__
__THERE WAS LOGO ON FOR MADISON SQUARE GARDEN ON THE RING FLOOR.__
__AND BUDWEISER LOGO ON RING POST.__
_____

PLEASE REMEMBER TO DATE AND SIGN THIS AFFIDAVIT IN THE PRESENCE OF THE NOTARY PUBLIC WHO SHALL NOTARIZE YOUR SIGNATURE.

BY: _____ (signature of auditor)

___Miguel Gomez JR___ (printed name of auditor)

DATED: __March__ (month) __19__ (day), 1999

SWORN TO AND SUBSCRIBED THIS __19__ DAY OF __March__ (month), 1999.

Notary Public in and for the State of: __TEXAS__   MY COMMISSION EXPIRES:

_____ (signature of Notary Public)



SAM GARZA
Notary Public
STATE OF TEXAS
My Comm. Exp. Feb. 1, 2001

1. Name of Auditor: **Miguel Gomez Jr**
2. Auditor's date of birth: **080471**
3. Name of Employer: **Bulletproof**
4. Name and address of the commercial establishment (please include full address including zip code):

**Sportsmen Cafe**

**Hwy 186 & Sixth Shore dr, Portmansfield TX 78578**

5. Did the establishment advertise or promote the telecast in any way? If so, please describe any banners, flyers, posters or any other promotion you observed:

**Advertising on chalk Board inside Business (Spcial event March 13th Holyfield-US- Lewis- Heavy Weight Title fight**

6. Was there an admission or cover charge? If so, how much? **NO**

Please answer 7A or 7B or both, if applicable, below. If you observed boxing activity on the screen, answer 7A. If you observed activities other than boxing (announcers, interviews, etc.), answer 7B. Please fill in as many blanks as possible.

7A. During my visit to the establishment, I observed the boxing match featuring
**Ruiz** vs **Cawly** (name fighters).
**Ruiz** (name one of the fighters) wore **Blank** color trunks,
while **Cawly** (name the other fighter) wore **White** color trunks. The fight appeared to be in the **1** round.

AND / OR

7B. During my visit to the establishment, I observed the announcers discussing the fight card. The announcers were wearing _____. I noticed that the _____ logo appeared on the microphones.

Specifically, the announcers were discussing _____

Other activity I observed on the screen included **Ring post displayed Budweiser logo**

8. I observed a total of **3** television sets in the establishment displaying the telecast. Of

those television sets that I observed, _____/_____ were big screens.

9. Provide a detailed description of at least one employee (name, gender, physical description, employee's position with the establishment, etc.):

Female Bartender Wearing Black shorts & Purple T-Shirt. Approx. 5ft 4inch & Approx. 160 pd Brown Hair & Brown eyes - Med - Complexion

10. Miscellaneous Notes:

Small T.V. Located at the bar - Another one in the middle of the resturant - Big screen TV to the rear of the establishment.

Approx. 35 people in the est.

Download of the TABC's Records
2-28-02

"CAMERON","MB413392","20020602","SPORTMEN'S CAFE","","","P M E CORPORATION","","634","N 13TH STREET","","","","HARLINGEN","TX","78550","PO BOX 51","","","PORT MANSFIELD","TX","78598","19970603","9569442862"

Download of Texas Secretary of State's Records
2-28-02

Company Information P M E CORPORATION
 PO BOX 51
 PRT MANSFIELD, TX 78598-0051
 Status IN GOOD STANDING NOT FOR DISSOLUTION OR WITHDRAWAL
 THROUGH MAY 15, 2002

Registered Agent **MITSY MICHELLE MARIS**
100 SOUTH PORT DR, PO BOX 51
PORT MANSFIELD, TX 78598
Registered Agent Resignation Date

State of Incorporation TX
File Number 0065322200
Charter/COA Date April 27, 1983

Charter/COA Type CHARTER
Taxpayer Number 17422689665

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.
    Plaintiff

Versus

Nick Maris & P.M.E. Corporation, both individually doing business
as Sportsmen's Cafe

    Defendants

+ Civil Case
+
+ H-02-0843
+

## Affidavit for Skip Klauber
### to Prove Plaintiff's Damages

Skip Klauber, known to me to be the same, being duly sworn, swears that:

1.    I am the Attorney of KingVision Pay-Per-View Ltd., ("Plaintiff"), and authorized to give this testimony.

2.    Plaintiff is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events.

3.    Plaintiff possessed the proprietary rights to exhibit and sublicense the right to exhibit the closed-circuit telecast of the March 13, 1999 boxing match between Evander Holyfield vs. Lennox Lewis, as well as being licensed to exhibit the match, including undercard or preliminary bouts (collectively the "event") at closed circuit locations, such as theaters, arenas, clubs, lounges, restaurants and other commercial establishments throughout the State of Texas.

4.    In Texas, the event was legally available to commercial establishments only through an agreement with Plaintiff.

5.    In order to safeguard against the unauthorized interception or receipt of the event, the interstate satellite transmission of the event was electronically coded or scrambled and was not available to or intended for the use of the general public. If a commercial establishment was authorized by Plaintiff to receive the event, the establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal.

6.    Authorized commercial establishments which contracted with Plaintiff were required to pay to Plaintiff a sublicense fee to receive the Event. This sublicense fee was based on the capacity of the establishment. The fee was based on $ 20 times the maximum fire code occupancy of the commercial establishment purchasing the event. For example, if an establishment had a maximum fire code occupancy of 150 persons, the fee would have been $ 3000 .

7.'    On March 13, 1999, without authorization, the Defendant, Nick Maris & P.M.E. Corporation, a Texas corporation d/b/a Sportsmen's Cafe, and Mitsy Michelle Maris, individually, ("Defendants") intercepted and received or assisted in the interception and receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of the Defendants' Establishment.  On the night of the Event, ~~investigators employed~~ an auditor ~~by Plaintiff~~ observed the Event being telecast to the patrons of the Defendant's Establishments.  A copy of the investigator's affidavit for this establishment is attached hereto to Plaintiff's Memorandum of Law in Support of Prove-Up on Damages by Default as Exhibit B. 

8.'    Defendants could not have obtained the transmission of the Event had they not undertaken specific wrongful actions to intercept, receive and/or exhibit the Telecast.

9.'    In addition to lost licensing fees, Defendant's patrons purchased food and/or drinks while viewing the Event.  But for Defendants' pirating, its patrons would have had to view the Event at a commercial establishment authorized by Plaintiff to receive and exhibit the transmission.

10.    As a result of theft by the Defendant and others, Plaintiff has lost and will continue to lose as customers, legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as the Defendant, which steal sports and other closed-circuit programming.  Because these unauthorized commercial establishments offer the stolen programming to its patrons for no fee or for a fee which is less than the authorized establishments may have charged, the legitimate commercial establishments with the right to broadcast closed-circuit programming cannot attract paying customers.  As a result, the authorized commercial establishments fail to recover the sublicense fees that they paid, lose patrons and incur financial loss.   When an unauthorized commercial establishment advertises the availability of the pirated programming, the number of patrons at the unauthorized commercial establishment increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional loss.

11.    A major source of Plaintiff's revenue is the sublicense fees which it charges to authorized commercial establishments of the right to broadcast closed-circuit sports and entertainment programming, such as the Event.  Clearly, therefore, the Defendant' actions have eroded the base of Plaintiff's customers.  Each patron of the Defendant is lost as a future patron of authorized broadcasts.  But for the Defendant' unauthorized broadcast of the Event, all or some of the patrons of the Defendant would have become paying patrons and directly increased the fees paid to Plaintiff by its authorized commercial establishments.

12.    Further, Plaintiff has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event.   When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the location of other authorized commercial establishments licensed to receive the programming.  Therefore, when an unauthorized commercial establishment intercepts, receives and exhibits closed-circuit programming, like the Event, Plaintiff's reputation and goodwill suffer from what appears like a misrepresentation. Furthermore, an incalculable damage is the ill-will and possible loss of future business from legitimate commercial establishments which refuse to pay sublicense fees because they cannot compete with unauthorized commercial establishments which pirate closed-circuit programming, such as the Event.

13.    The continued viability of Plaintiff as a business concern depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed-circuit sports and entertainment programming, such as the Event. If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate commercial establishments will find no reason to purchase the right to legally broadcast this type of programming.

14.    Because the Event was broadcast to the Defendants' patrons, the Defendants only purpose and intent in exhibiting the Event was to secure a private financial gain and direct commercial purposes by misappropriating Plaintiff's licensed exhibitions and infringing upon Plaintiff's rights while avoiding proper payment to Plaintiff.

15.    As a willful violator of this Act, the Defendant must be held accountable for a substantial amount above the market value of the sublicense fees to broadcast the Event. Otherwise, other commercial establishments would be encouraged to violate the law knowing the full extent of its liability would not exceed what they would have to pay for a license on the open market. The award of damages must be sufficiently significant to deter the Defendant and other unauthorized commercial establishments from pirating protected communications.

I swear, under the penalties of perjury and upon personal knowledge that these facts are true.

_____

Skip Klauber

Subscribed and sworn to before me this 18 day of September 2002.

Notary Public

_Candace J. Blank_

Candace Lorrin Blank
Commission # GG 876835
Expires Oct. 5, 2003
Bonded Thru
Atlantic Bonding Co., Inc.

# The Baumann Law Firm
1601 Westheimer
Houston, Texas 77006-3795
Telecopier: (713) 520-6417
(713) 529-1600
Riecke@TexasCollect.com

Riecke Baumann
Board Certified Consumer Bankruptcy
Texas Board of Legal Specialization

Texas Bar Association
# 01931700
Louisiana Bar Association
# 02856

May 15, 2002

To:    Nick Maris & P.M.E. Corporation, both individually doing business as Sportsmen's Cafe
634 N. 13th St.
Port Mansfield, Texas 78598

Re:    KingVision Pay-Per-View Ltd.
Unauthorized Display of Match Between
Evander Holyfield vs. Lennox Lewis
March 13, 1999
99 0313HL TX33

Dear Sirs:

You have already been sent letters demanding payment for showing this event.

The file has been sent to this firm, to file suit.

If you wish to resolve it, without suit, please call this office, immediately,

Very truly yours,


Riecke Baumann

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| KING VISION | § | CASE NO. CA-H-02-843 |
| | § | |
| VERSUS | § | HOUSTON, TEXAS |
| | § | AUGUST 23, 2002 |
| NICK MARIS | § | 10:37 A.M. TO 10:38 A.M. |

### RULE 16 SCHEDULING CONFERENCE

BEFORE THE HONORABLE MARCIA CRONE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:     SEE NEXT PAGE

For the Defendant:     SEE NEXT PAGE

Court Clerk:     Carol Dennie

Court Recorder:     None

PREPARED BY:

JUDICIAL TRANSCRIBERS OF TEXAS, INC.
P.O. Box 925675
Houston, Texas 77292-5675
Tel: 713-697-4718    Fax: 713-697-4722

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
No electronic recording operator present; therefore,
no log of proceedings nor and terms provided.

APPEARANCES:

For the Plaintiff:                    MR. RICK BAUMANN
                                      Attorney at Law
                                      1601 Westheimer
                                      Houston, Texas 77006


For the Defendant:                    Pro Se

1    **THE COURT:**  H-02-843, *King Vision Pay Per View versus*

2   *Nick Maris.*

3    **MR. BAUMANN:**  Good morning, Your Honor.  We've never

4   met.  I'm Rick Baumann.  I represent the plaintiff.

5    **THE COURT:**  And is the defendant here?

6    **MR. BAUMANN:**  I don't think Mr. Maris hears as well as

7   some of us.  I have to raise my voice to him just a little bit.

8   So --

9    **THE COURT:**  Oh, I see.  Okay.  Okay.

10    **MR. MARIS:**  Good morning, Your Honor.

11    **THE COURT:**  Hello.

12    All right.  Well, the scheduling order looks fine.

13   Do you have any questions?

14    **MR. BAUMANN:**  I could probably raise it in a motion,

15   but he's here representing the corporation and his daughter.  The

16   answer is by his daughter for the corporation.  I don't think

17   that's kosher.

18    **THE COURT:**  A corporation has to have a lawyer.

19   Individuals can represent themselves pro se, but a corporation

20   has to be represented by a lawyer.

21    **MR. BAUMANN:**  I'm going to file motions for defaults,

22   but I figure if I mention it today the Court might appreciate

23   it's going to come up anyway.

24    **THE COURT:**  Okay.  But that's certainly the law that --

25   Otherwise, it would strike any kind of defensive pleadings if you

1    don't have the proper representation with regard to the

2    corporation.

3              **MR. MARIS:**  That's no problem.  We can get a lawyer.

4              **THE COURT:**  That's what you'll need to do.

5                   Okay.  Very well.  Thank you.  You're excused.

6              **MR. BAUMANN:**  Thank you, Your Honor.

7         **(These proceedings concluded at 10:38 a.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        * * * * *

# C E R T I F I C A T I O N

I certify that the foregoing is a correct
transcript from the electronic sound
recording of the proceedings in
the above-entitled matter.

_____
Signature of Transcriber

_____
Date

_____
JTT#

.n the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.                    +    Civil Case
      Plaintiff                              +
                                                +    H-02-0843
      Versus                                 +    Judge Crone
                                                +
Nick Maris, Defendant;
      and
P.M.E Café doing business as Sportsmen's Café
      Defendants

      Plaintiff serves the following Requests for Admissions, Interrogatories, and Requests for Admissions on Defendants

      <u>Definitions</u>:   As used in these Interrogatories, Requests for Admissions, and Requests for Production, the following terms are to be construed with the following definitions:

1) "And" as well as "or" shall be construed either disjunctively or conjunctively, and references shall be construed either as singular or plural, as necessary, to bring within the scope of this discovery any information or documents which might otherwise be construed to be outside its scope.

2) "Cable operator" means a person who provides cable service or, in whole or in part, owns, operates or controls one or more cable systems.

3) "Cable service" has the meaning as set out in 602(5) of the Communications Act, 47 U.S.C. 522(5). "Cable" or "video" programming, as used in this definition has the meaning set out in '602(16) of the Communications Act, 47 U.S.C. 522(16).

4) "Cable system" has the meaning set out in 602(6) of the Communications Act, 47 U.S.C. 522(6).

5) The terms "communicate" or "communication" include every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange, whether face-to-face, by telephone, mail, personal delivery or otherwise.

6) "Communications Act" means the Communications Act of 1934, 47 U.S.C. 1, et seq.

7) "Complaint" means the complaint filed by Plaintiff in this action, and any amendments thereto that may subsequently be filed.

8) The term "document" is used in its broadest sense and includes, without limitation, all writings of every kind, including, without limitation, letters, telegrams, memoranda, reports, studies, calendar and diary entries, maps, pamphlets, notes, charts, tabulations, analyses, statistical or information accumulations, audits and associated

work papers, any kind of records of meetings or conversation, film impressions, magnetic tape, sound or mechanical reproductions, all stored compilations of information of any kind which may be retrievable (such as, but without limitation, the contents of computer memory or information storage facilities, and computer programs, and any instructions or interpretive materials associated with them), and copies of documents which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached hereto) whether or not the originals are in Defendants' possession, custody or control. The term "document" specifically includes, without limitation, all drafts and preliminary versions of documents.

9) "Event" means the closed-circuit telecast of the March 13, 1999 (March 13, 1999) professional boxing match between Evander Holyfield vs. Lennox Lewis, including undercard or preliminary bouts.

10) The "Establishment" refers to and includes "Sportsmen's Cafe" and the places of business that they operate or that operate at that location.

11) "Franchise" has the meaning set out in 602(8) of the Communications Act, 47 U.S.C. 522(8).

    (a) The words "identify" and "identification", when used in connection with a verbal communication, shall mean to state: (i) the date of that communication' (ii) the name and the title of the person(s) who were parties to that communication; (iii) the name and title of the person(s) who were witnesses (other than the parties) to that communication; (iv) state whether that communication was face-to-face and/or over the telephone, and if face-to-face, describe the location of that communication; and (v) provide a list of any documents which relate to that communication, including a brief description of the subject matter of each such document.

    (b) The words "identify" and "identification", when used in reference to a natural person, means to state: (i) the person's full name; (ii) present (or last known) address; (iii) present (or last known) occupation or position; and (iv) names of his present (or last known) employer.

    (c) The words "identify" and "identification" when used in reference to a business or entity, means to state: (i) its full name; (ii) its present (or last known) address; (iii) its present (or last known) telephone number; and (iv) the full name and present (or last known) address and telephone number of each parent, subsidiary, or affiliated entity.

    (d) The words "identify" and "identification" when used in reference to a document, means to state: (i) its date' (ii) its general subject matter' (iii) its author' (iv) its recipients' and (v) the type of document (e.g., letter memorandum, telegram, chart, computer input or printout, photograph, sound reproduction, etc.). If the document is no longer in your possession or subject to your control, then identify the present (or last known) custodian of the document and state whether the document: (i) is missing or lost; (ii) has been destroyed; (iii) has

been transferred; voluntarily or involuntarily, to others; or (iv) has been otherwise disposed of; and in each instance, explain the circumstances surrounding the authorization for disposition thereof and state the date or approximate date thereof. If you claim any privileges (including work product) with respect to any document, state the basis upon which the claim of privilege is made.

12) "Including" means including but not limited to.

13) The term "Licensing Companies" includes KingVision Pay-Per-View Ltd., National Satellite Sports, Inc.; That's Entertainment, Inc.; Prime Entertainment, Inc.; and King-Vision Pay-Per-View Corp.

14). "Or" means and/or.

15) "Person" means all natural persons, corporations, partnerships, or other business associations, and all other legal entities.

16) "Plaintiff" refers to and includes KingVision Pay-Per-View Ltd., as well as all of its agents, representatives and employees.

17) "Relate to" and "relating to" means to make a statement about, referring to, discussing, describing, reflecting, containing, identifying or in any way pertaining to, in whole or in part.

18) "Relating to" or "concerning" means, without limitation, containing, showing or relating or referring to in any way, directly or indirectly, or being logically, legally or factually related.

19) "Relating to" or "Concerning" also means, without limitation, containing, showing or relating or referring to in any way, directly or indirectly, or being logically, legally or factually related.

20) "Satellite programming" or "Satellite services" includes all programming or services received via satellite and includes those services within the meaning of Section 705 of the Communications Act, 47 U.S.C. 605.

21) "You" and "Your" refer to and include the person answering these Interrogatories and that person's agents, representatives and attorneys. When the person answering these Interrogatories is the Establishment, the terms "you" and "your" further include (a) the Establishment's predecessors, successors, subsidiaries, parents, divisions and affiliates and (b) the Establishment's present and former stockholders, partners, officers, directors, employees, agents, voting trustees and other persons acting on behalf of it or one or more of its predecessors, successors, subsidiaries, parents, divisions or affiliates, including, but not limited to, consultants, attorneys, or other agents.

22) The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of a noun or pronoun, and vice versa.

23) Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraph more, rather than less, inclusive.

### Request for Admissions of Facts

Plaintiff, through its attorney, Riecke Baumann, pursuant to Rule 36 of the Federal Rules of Civil Procedure, requests Nick Maris, Defendant; Sportsmen's Cafe, Defendant; and P.M.E. Corporation doing business as Sportsmen's Cafe, separately and individually, within thirty (30) days after service of this Request, to admit that each of the following statements of fact is true.

In accordance with Rule 36, if you are unable to admit any of the following statements of fact, you are requested to set forth in detail the reason(s) why you cannot admit the truth of any such statements. Admit or deny that:

1. Neither you nor anyone else ordered the Event for the Establishment.

2. Neither you nor anyone else ordered the Event for from any other authorized party with the intention of paying Plaintiff for the telecast of the Event.

3. You, your agents, servants and/or employees intercepted the broadcast of the Event.

4. You, your agents, servants and/or employees broadcast the Event in the Establishment.

5. In advance of the Event, you advertised that the Event would be telecast within your Establishment.

6. On the date of the Event, the Establishment required its clientele to pay a cover charge or other fee to enter its premises.

7. The Event was shown in the Establishment on the March 13, 1999.

8. You know that patrons at the Establishment watched the Event on the premises.

9. During the one year prior to the March 13, 1999, the Establishment broadcast professional boxing matches other than the Event.

10.   The Event was received in the Establishment because residential cable service was diverted into the Establishment.

11.   The Event was received in the Establishment because an illegal decoder was used in the Establishment.

12.   The Event was received in the Establishment because its agents employed some means to intercept or receive the Event.

13.   The liquor license for the Establishment was issued to P.M.E. Corporation on the day of the Event.

14.   Chris Maris was believed to be in the Establishment on the night of the Event.

15.    Nick Maris was believed to be in the Establishment on the night of the Event.

16.    The persons at the Establishment serving as bartenders, and/or the manager, act as agents on behalf of P.M.E Corporation.

17.    The persons at the Establishment serving as bartenders, and/or the manager, act as agents on behalf of Nick Maris.

18.    The Event was received in the Establishment because residential satellite service was diverted into the Establishment.

19.    The television monitors within the Establishment exist for the viewing pleasure of the Establishment's patrons.

20.    The Establishment exhibits television programming that is believed to be of interest to the Establishment's patrons.

21.    Plaintiff should be awarded actual damages of at least $25,000.

22.    Plaintiff should be awarded statutory and punitive damages of at least $50,000.

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.
    Plaintiff

Versus

Nick Maris, Defendant;
Sportsmen's Café, Defendant; and
P.M.E Corporation doing business as Sportsmen's Café
    Defendants

+  Civil Case
+
+  H-02-0843
   Judge Crone
+

## Plaintiff's First Set of Interrogatories to Defendants

Plaintiff, by its undersigned counsel, pursuant to Fed.R.Civ.P. 33 and the following definitions and instructions, propounds to the Defendants, the following Interrogatories, which are to be answered by each Defendant, separately and individually, in writing and under oath within thirty (30) days after service.

### Instructions

1. In accordance with Fed.R.Civ.P. 33, answer each Interrogatory separately and fully in writing under oath, unless it is objected to, in which event, state reasons for objection in lieu of an answer, and answer each other portion of the Interrogatory to which no objection is asserted. The answers are to be signed by the person making them and the objections signed by the attorney making them. However, if, in accordance with Rule 33(c), you produce business records in lieu of an answer to an Interrogatory, specify the records from which the answer may be derived or ascertained in sufficient detail to permit the Plaintiff to locate and to identify, as readily as the responding party, the records from which the answer may be ascertained and the actual answer. Documents produced in lieu of answering these Interrogatories should be produced in compliance with the instructions contained in the Plaintiff's Request for Production of Documents and Things propounded upon the Establishment.

2. If you are unable to answer an Interrogatory fully, submit as much information as is available and explain why your answer is incomplete. If precise information cannot be supplied, submit (a) your best estimate or judgment, so identified, and set out the source or basis of the estimate or judgment and (b) provide such information available to you as best approximates the information requested. Where incomplete answers, estimates or judgments are submitted and you know of or have reason to believe there are other sources of more complete or accurate information, identify or describe those other sources of information.

3. In responding to Interrogatories, preface each answer by restating the Interrogatory to which the answer is addressed. Where a request for information

includes subparagraphs (e.g., (a), (b), (c)), or subdivisions (e.g., (i), (ii), (iii)), answer each subparagraph or subdivision separately.   To assist you, Plaintiff will be supply copies by diskette or e-mail, upon request.

4. Unless otherwise expressly provided, these Interrogatories pertain to any document or information prepared, received, distributed, or in effect during the period from to the date of trial.

5. These Interrogatories are continuing in nature and include all documents and information prepared or received by you between the date of receipt of these Interrogatories and the date of trial. Your responses to these Interrogatories should be supplemented not later than thirty (30) days prior to any hearing addressing the merits of any party's claims or defenses.

6. Documents which in their original condition were stapled, clipped or otherwise fastened together shall be produced in such form. Documents produced in response to a particular Interrogatory are to be separately grouped with reference to that Interrogatory.

7. For any objection that is based on an asserted claim of privilege, state:

(a) a brief description of the subject matter of the alleged privileged information;

(b) the nature of the privilege claimed;

(c) the paragraph(s) of the Interrogatory to which the information is otherwise responsive;

(d) the nature and basis of the privilege claimed;

(e) the source(s) of the information; and

(f) the identities of all persons to whom such information has been communicated or with whom it has been shared, in whole or in part.

### Interrogatories

Regarding the bars and businesses which operate at Hwy 186 & South Shore Drive, Port Mansfield, Texas 78598 or 634 North 34th Street, Harlingen, Texas 78598, or which operate under the name "Sportsmen's Cafe" and all similar names used by any entity at any of the listed addresses, or similar addresses, please identify:

a. The legal and common names for all such persons or entities;

b. For each such entity, please state what kind of entity it is, for instance, whether it's a person, a "d/b/a," corporation, partnership, etc.;

c. For each owner of each entity, list all known addresses, including home, work, post office boxes, etc., and all telephone, fax, cell phone and pager numbers, as well as all e-mail and web site addresses, and how you would reach such a person in an emergency;

d. For every entity doing business at the above addresses, please state the nature of each business and provide copies of all licenses, corporate

charters, assumed named affidavits, and partnership agreements, for the last five years;

2. Identify the date of each of Plaintiff's telecasts purchased by you and/or the Establishment from the date six months before the date of the event through the present, and identify both from whom each purchase was made and the method of payment.

3. Identify the date and nature of each pay-per-view telecast purchased by you and/or the Establishment from six months before the date of the event through the present, and identify both from whom each purchase was made and the method of payment.

4. Identify (1) the number of television sets which were in operation at the Establishment on the evening of the event; (2) the size and make of each set; and (3) the number of television sets which were exhibiting the Event.

5. Identify everyone who ordered the Event for the Establishment from any source.

6. If anyone has exhibited any pay-per-view event by cable or satellite, or acted as a closed-circuit exhibitor at the Establishment at any time other than the night of the Event, identify the dates and the broadcasts shown during all such exhibitions.

7. Explain how you learned of the availability of the Event. In your answer, identify all notices, radio, television or newspaper advertisements and signs, including those appearing electronically on television or on satellite programming, that you have seen concerning the Event.

8. Identify methods by which the Establishment received the Event, whether by cable, satellite, or both, or by any other means through which the Establishment received the Event and the dates thereof.

9. Identify the cable company, satellite dealer, or independent distributor from whom you and/or the Establishment ordered the Event, and describe fully and specifically every communication between representatives of the Establishment and the cable company, satellite dealer or independent distributors regarding the Event.

10. Identify all methods of advertising you or the Establishment employed regarding the Establishment's display of the Event, including, without limitation, advertisements made by radio, newspapers, pamphlets, handbills, signs and banners.

11. Identify all employees of and/or owners, operators, partners or interest holders in the Establishment who were on duty and/or on the premises between 6:00 p.m. and 1:00 a.m. on the evening of the event and for each individual provide his or her home address, telephone number, and cell phone number.

12. List all functions, duties, and responsibilities which you have at the Establishment including all functions and responsibilities which you had on the day of the event.

13. Identify each employee of the Establishment as of the day of the event, and state which of these employees was on duty on the evening of the event. Include in your answer an identification of (1) the manager on duty that evening; and (2) the assistant manager on duty that evening.

14. Identify all charges, including, food and beverage charges or any other charge that was implemented at the time of, or in relation to, the telecasts of the Event.

15. Identify all owners, partners, whether general or limited, shareholders, investors, or any other individuals who possessed an ownership interest in the Establishment from six months before the event to the present.

16. Identify any claims, whether actual or contemplated, made against you and/or the Establishment for the theft of cable television services or programming, the theft of Satellite programming, the theft of pay-per-view programming, violation of any law regarding the reception of the aforesaid services or programming, or regarding you and/or the Establishment's unauthorized receipt of the aforesaid services or programming, and include the name of the party asserting the claim, the date of the claim, the date of the alleged theft, violation or unauthorized receipt, the nature of the claim, and the resolution of the claim.

17. Identify everyone who, on your behalf or on behalf of the Establishment, ever purchased, leased, installed, connected, or possessed any device capable of receiving and/or unscrambling cable television, satellite programming or video programming since the event.

18. If you identified anyone in Interrogatory No. 16, identify all such purchases, offers to purchase, leases, installations, connections, possessions, including the dates, number of every device, the manufacturer of the devices, the manner in which each device came into your possession, the names, addresses of each and every person from whom you bought, leased, or otherwise received each such device, and dates thereof.

19. On the evening of the event, did you have in your possession or did anyone at the Establishment have possession of devices capable of receiving or unscrambling cable or satellite television programming?

20. If your answer to Interrogatory No. 18 was in the affirmative, identify (a) how you learned of the availability of the device; (b) who sold you the device; (c) who modified the device; (d) who installed or connected the device; (e) the date of such purchase, installation or connection; (f) the precise consideration or dollars paid for such purchase, installation or connection; (g) the source or manufacturer of the device, including the identity of any modifier of the device; and (h) the current whereabouts of the device.

21. Identify where you resided on the day of the event, and where you reside at this time, and list your telephone and cell phone numbers.

22. Identify whether you had cable service at your residence during any period one month before the event until today.

23. State whether you moved or reconnected any cable television decoder capable of receiving the Event from any residence or other location to the Establishment or whether you allowed such a connection to be made, and identify the location from which such device was moved or reconnected.

24. Identify every document or tangible thing, and identify the custodian of every document or other tangible thing, that is relevant to the subject matter of each allegation in the Complaint or affirmative defense in the Answer, including all documents or things requested to be produced in the Request for Production of Documents and Things propounded upon Defendant.

25. Identify all facts and circumstances which you contend are defenses to any allegation in the Complaint, including those facts or circumstances which relate to damages or liability.

26. Describe in detail all of the facts upon which you rely to support all legal theories and contentions which operate as defense to any of the counts or prayers for relief in Plaintiff's Complaint.

27. State whether you are aware of any written, recorded or oral statement concerning this action or the subject matter of this action made by the Plaintiff or any agent, servant, representative or employee of the Plaintiff and if so, identify the person making each statement, the person to whom it was made and any witnesses thereto, state the time, place and manner of the statement, the substance of the statement and the present custodian of any written or recorded statements.

28. Identify all persons not identified in your answers to the previous Interrogatories who possesses knowledge of facts concerning any of the allegations contained in the Complaint, Answer or other pleadings and fully describe the nature and extent of their knowledge about such matters, the substance of the facts known to each such person and whether any such person has made a written or oral statement of said facts and the contents of said statement.

29. Identify everyone who provided assistance or information used in answering these Interrogatories.

30. Describe in complete factual detail all communications that you have ever had with any agent or representative of the Licensing Companies regarding any pay-per-view event that you and/or the Establishment broadcast or sought to broadcast in the Establishment, including in your response the dates and manner of all such communications, the complete substance of such communications, the identities of the persons who participated in such communications and an identification of all documents that constitute, or refer or relate to, such communications.

31. Regarding the bars and businesses which operate at the premises, or which operate under the names "Sportsmen's Cafe" and all similar names used by any entity at any of the listed addresses, or similar addresses, please identify:

    a. The legal and common names for all such persons or entities;

    b. For each such entity, please state what kind of entity it is, for instance, whether it's a person, a "d/b/a," corporation, partnership, etc.

    c. For each owner of each entity, list all known addresses, including home, work, post office boxes, etc., and all telephone, fax, cell phone and pager numbers, as well as all e-mail and web site addresses, and how you would reach such a person in an emergency.

    d. For every entity doing business at the above addresses, please state the nature of each business and provide copies of all licenses, corporate charters, assumed named affidavits, and partnership agreements, for the last five years.

The State of Texas County of Harris:

    Before me, on this day personally appeared _____, who, being by me duly sworn, upon oath stated that each of the foregoing answers to interrogatories is true.


    Affiant: _____

    Signed and sworn to before me on the   day of              , 2002.

                               Notary Public

The State of Texas County of Harris:

    Before me, on this day personally appeared _____, as agent for _____ who, being by me duly sworn, upon oath stated that each of the foregoing answers to interrogatories is true.


    Affiant__ _____

    Signed and sworn to before me on the   day of               2002.

                               Notary Public

In the United States District Court
For the Southern District of Texas
Brownsville Division

KingVision Pay-Per-View Ltd.                    +    Civil Case
    Plaintiff                                            +
                                                          +    H-02-0843
    Versus                                               +    Judge Crone
                                                          +

Nick Maris, Defendant;
    and
P.M.E Corporation doing business as Sportsmen's Café
    Defendants

## PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANTS

    KingVision Pay-Per-View Ltd., pursuant to Fed.R.Civ.P. 34, and the following definitions and instructions, instructs Nick Maris, Defendant; Sportsmen's Cafe, Defendant; and P.M.E. Corporation doing business as Sportsmen's Cafe, separately and individually, to produce the following documents and things for inspection, copying, testing and sampling within thirty days (30) from service, at the offices of Riecke Baumann, 1601 Westheimer, Port Mansfield, Texas 77006.

### Instructions

    1.    Unless otherwise expressly provided, each paragraph of this request covers any document or information prepared, received, distributed, or in effect during the period from six months before the March 13, 1999 to the date of trial.

    2.    This request is continuing in nature and includes all documents and information prepared or received by you between the date of receipt of this request and the date of trial. Your responses to these requests should be supplemented not later than thirty (30) days prior to any hearing addressing the merits of any party's claims or defenses.

    3.    Documents which in their original condition were stapled, clipped or otherwise fastened together shall be produced in such form. Documents which in their original condition are part of a computer disc or diskette, shall be produced by way of providing the disc, diskette or computer itself along with any appropriate passwords, access codes or other information or input necessary to access the date on the disc or diskette.

    4.    Documents responsive to each numbered paragraph are to be separately grouped by paragraph. If any portion of a document is responsive to this request, the entire document shall be produced. In order to facilitate review and avoid any possibility of misinterpretation, place all documents produced in file folders bearing the number of the paragraph to which they are responsive.

5.      With respect to any document which any defendant withholds on a claim of privilege, provide a statement, setting forth as to each such document:

- (a)   The name of the sender(s) of the document;
- (b)   The name of the author(s) of the document;
- (c)   The name(s) of the person(s) who received copies of the document;
- (d)   The employer and job title of every person named in (a), (b) and (c) above;
- (e)   The date of the document;
- (f)   The date on which the document was received by each addressee, or recipient;
- (g)   A brief description of the nature and subject matter of the document; and
- (h)   A statement of the basis for the privilege claimed.

## Document Requests

1.      All documents identified in your Answers to Interrogatories.

2.      All documents, correspondence, agreements, notices, sales records, credit card receipts, cash receipts, and all other documents reflecting your purchase, sale, installation, lease, possession or other disposition of any device capable of unscrambling cable or satellite television programming.

3.      Your bank deposit and cash receipts for the time period of six months before the March 13, 1999 to the present reflecting (1) any deposits of funds received by you or (2) payments made by you which relate, in any way, to any device capable of unscrambling cable or satellite television programming.

4.      All documents which identify or specify the name, address or location of any device owned, operated or utilized by you and/or the Establishment which is capable of unscrambling cable or satellite television programming.

5.      All documents referring to or relating to any device owned, operated or utilized by you and/or the Establishment which is capable of receiving or unscrambling cable or satellite television programming, including, but not limited to, any such device you may have had in your possession on the March 13, 1999.

6.      All documents concerning, relating to or exhibiting the videocipher number located on every satellite dish located at the Establishment.

7.      All documents relating to satellite and/or cable television service and programming agreement(s) in effect for the month and year of the event, for you and/or the Establishment.

8.      All documents relating to satellite and/or cable television service and programming agreement(s) in effect for the month and year of the event for any owner, manager, employee, customer, patron or neighboring resident who brought any satellite or cable receiver or decoder into the Establishment or who connected any satellite or cable receiver or decoder at the Establishment.

Page 2 of 5

9.    Any agreements, notices or other documents which refer or relate to the ordering, receiving, and/or exhibiting of cable or satellite programming, including, but not limited to, the Event at the Establishment.

10.    All daily sales records, credit card receipts, bar checks, food checks, and all other documents reflecting your sales of food and drinks and any other income on the March 13, 1999.

11.    Your bank deposit records for the three business days next following the March 13, 1999.

12.    All your bank deposit records reflecting any deposits of funds received on the March 13, 1999.

13.    Any document that you intend to use as an exhibit at the trial of this matter.

14.    All documents identifying, referring or relating to all persons you expect to call as expert witnesses at trial, the area(s) of expertise and subject matter on which the expert is expected to testify, the substance of the findings and opinions to which the expert is expected to testify and a summary of the grounds for each opinion, all written reports of each expert, the most recent resume or curriculum vitae of each expert and all notes, diagrams, photographs, videotapes or other documents prepared or reviewed by each expert.

15.    All written or recorded statements and documents referring or relating to all oral statements concerning this action or the subject matter of this action made by the Establishment or any agent, servant, representative or employee of the Establishment.

16.    All written or recorded statements concerning this action or the subject matter of this action made by anyone other than the Establishment, or any agent, servant, representative or employee of the Establishment.

17.    All documents establishing, referring or relating to all persons who have personal knowledge of facts concerning this action or the subject matter of this action, and the substance of those facts.

18.    All releases, settlements, or other agreements, formal or informal, pursuant to which the liability of any person for any damage arising out of the actions described in the Complaint has been limited, reduced or released in any manner.

19.    All insurance agreements under which any person carrying on an insurance business might be liable to you or to any other party to this action for the claims and alleged damages in this action, or to satisfy part or all of a judgment that might be entered in this action or to indemnify or reimburse for payments to satisfy the judgment.

20.    All documents, including cash receipts, canceled checks and contracts, which evidence and/or identify (a) the type of entertainment which was provided in the Establishment on the March 13, 1999, (b) whether said entertainment was actually provided and (c) the persons or entities which provided said entertainment.

21.     All records, including, but not limited to, time cards and pay stubs, which indicate the identities of all employees who worked or were otherwise present at the Establishment on the March 13, 1999.

22.     All documents which relate to, refer to or support your denial of any of the facts and matters set forth in the Complaint.

23.     All documents not previously identified in your Responses to these Document Requests which support, refer or relate to any claim or defenses relevant to the Complaint.

24.     All documents that refer or relate to communications between you and any other person regarding the Event.

25.     All documents which reflect or indicate the identities of customers, patrons or any other persons present at the Establishment on the March 13, 1999.

26.     All documents which constitute, or refer or relate to, communications between you and the Licensing Companies regarding any pay-per-view events that you received or sought to receive.

27.     All documents that you saw, created or distributed regarding the Event.

28.     All documents that constitute, or refer or relate to, any communications between you and KingVision Pay-Per-View Ltd.

29.     Regarding the bars and businesses which operate at Hwy 186 & South Shore Drive, Port Mansfield, Texas 78598 or 634 North 34th Street, Harlingen, Texas 78598, or which operate under the names "Sportsmen's Cafe" and all similar names used by any entity at any of the listed addresses, or similar addresses, please provide:

    a. Copies of all documents proving the legal, assumed names, and common names for all owners, or entities operating business there. For each such entity, please proof of what kind of entity it is, for instance, whether it's a person, a "d/b/a," corporation, partnership, etc.

    b. Provide copies of all licenses issued to the businesses at that location, and to the owners of those businesses.

    c. For each owner of each entity, provide all documents proving all addresses, including home, work, post office boxes, etc., and all telephone, fax, cell phone and pager numbers, as well as all e-mail and web site addresses, and how each such could be reached in an emergency.

    d. For every entity doing business at the above addresses, please state the nature of each business and provide copies of all licenses, corporate charters, assumed named affidavits, and partnership agreements, for the last five years.

30.     Copies or photographs of all advertisements and promotional items for the event that were displayed.

BY: _____

Riecke Baumann
Attorney for KingVision Pay-Per-View Ltd.

In the United States District Court
For the Southern District of Texas
Houston Division

KingVision Pay-Per-View Ltd.                                    ✦     Civil Case
                                                               ✦
                                                               ✦     B-03-021
            Versus                                             ✦

Nick Maris & P.M.E. Corporation,                                     Judge
both individually doing business as Sportsmen's Cafe                 John William Black

Plaintiff's Witness List

I.     Riecke Baumann, as to attorneys' fees, and service of discovery.   He is an

       attorney, licensed for 28 years.

II.    Plaintiff's representative, probably by affidavit, as to damages (Kelly Ann Filerino or

       Marcus Corwin).

III.   Auditor, Miguel Gomez Jr., probably by the affidavit attached to the exhibit list.

IV.    Defendant.

V.     Any witness called by Defendant..

                                                Respectfully submitted,


                                                Riecke Baumann
                                                Attorney at Law
                                                1601 Westheimer Road
                                                Houston, Texas 77006
                                                T/p 713 529-1600
                                                Fax 713 520-6417
                                                SBOT 01931700
                                                Riecke@TexasCollect.com